**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

LEWIS T. WHITE                                                                                            PLAINTIFF

v.                                                    No. 5:04CV0318 JLH

ARKANSAS DEPARTMENT OF HEALTH AND HUMAN SERVICES,
KURT KNICKREHM, in his individual and official capacities,
JOHN SELIG, in his individual and official capacities                                        DEFENDANTS

## OPINION AND ORDER

This is an employment discrimination case.  Pursuant to 42 U.S.C. § 2000e *et seq.* (Title VII

of the Civil Rights Act of 1964), Lewis White, a 55-year-old African-American male, brought race,

age, and sex discrimination and retaliation claims against his former employer, Arkansas

Department of Health & Human Services ("DHHS"); Kurt Knickrehm, former Director of the

Arkansas Department of Human Services; and John Selig, current Director of the Arkansas

Department of Health & Human Services.  The defendants have moved for summary judgment

(Docket #19).  For the reasons stated below, this motion is granted.

A court should grant summary judgment when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law."  FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district

court of the basis of its motion and identifying the portions of the pleadings, depositions, answers

to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the

absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)*;*

*Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 763 (8th Cir. 2003).  When the

moving party has carried its burden under Rule 56(c), the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1985) (quoting FED. R. CIV. P. 56(e)). The non-moving party sustains this burden by showing that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a non-moving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. In deciding a motion for summary judgment, the Court must view the facts and inferences in the light most favorable to the party opposing summary judgment. *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001) (citing *Rabuska v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997)). If the evidence would allow a reasonable jury to return a verdict for the non-moving party, summary judgment should be denied. *Derickson v. Fidelity Life Assoc.*, 77 F.3d 263, 264 (8th Cir. 1996) (citing *Anderson*, 477 U.S. at 248).

The Eighth Circuit has said that summary judgment should seldom be granted in discrimination cases where inferences are often the basis of the claim. *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1024 (8th Cir. 2004) (citing *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J. dissenting).

## I.

White began working for the Arkansas Department of Human Services ("DHS") in August 1994. Through an interagency agreement between DHS's Division of Mental Health Services

("DMHS") and the Arkansas Department of Health, White was reassigned in 1997 to work for the Bureau of Alcohol and Drug Abuse Prevention ("BADAP"), which was then a part of the Department of Health.  The interagency agreement stated, in pertinent part, "This agreement will be in place until June 30, 1999.  Neither DMHS nor BADAP will have an obligation for continued funding of this position beyond June 30, 1999."

During the summer of 1999, White was notified that his position would be eliminated and that his employment would be terminated through a procedure termed a Reduction in Force ("RIF"). Kurt Knickrehm, who was then the Director of the Department of Human Services, sent a memo to "DHS Executive Staff" regarding this RIF.  The memo stated: "[White] will be considered for all vacant positions in the department for which [he] qualifies.  Mandatory placement is not required with this RIF plan.  However, employee placement is expeditious as described in the attached procedures."  The "attached procedures" described a streamlined process for hiring employees affected by an RIF into other available positions within DHS.

White began applying for various other positions with DHS before his employment ended, and continued applying after his termination.  White alleges that he applied for at least 50 such positions, and the defendants concede that he applied for at least 35.  In any event, White was not offered any of the positions.

The parties agree that White possessed at least the minimum qualifications required for each of the 35 positions described in the record.  The defendants assert that White was not hired, however, because the positions were all filled by applicants with more specific and directly related experience and education for the particular jobs in question.  White does not dispute that most of the positions were filled by applicants who were better qualified than himself.  He asserts, however, that he was more qualified for seven of the positions for which he applied than the individuals hired.

During White's tenure with DHS, he alleged in a memorandum to his supervisor that John Selig took "racist, retaliatory and discriminatory actions" against him. The record contains no information as to what these alleged discriminatory actions involved. At the time that White's employment was terminated in August 1999, he had an ongoing Title VII action that had been commenced in March 1998. After his termination, White commenced two more Title VII actions, and all three cases were consolidated into one. White voluntarily dismissed that lawsuit, however, in August 2000. White now claims that the defendants failed to hire him for any of the seven positions at issue in retaliation for his previous Title VII complaints and because of his age, race, and sex.[1]

## II.

White cites only Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) as the basis of jurisdiction for his claims. As discussed below, Title VII covers claims of sex and race discrimination in employment and retaliation against an individual for bringing such discrimination claims. *See* 42 U.S.C. §§ 2000e-2(a), 2000e-3(a). Title VII does not prohibit discrimination on the basis of age. White does not cite the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 621 *et seq.*) as the basis of his age discrimination claim. Because White alleges that the defendants failed to hire him because of his age, however, the Court will analyze this claim under the ADEA.

---

[1] White also contends that the RIF resulting in his termination was "discriminatory and retaliatory against him for his participation in protected activity [sic] of filing race discrimination charges and complaining . . . of Selig's racist attitude toward him." The defendants assert and White concedes, however, that his claims as to the RIF/termination are precluded because he did not timely file a complaint as to this issue with the Equal Employment Opportunity Commission ("EEOC"). White was terminated in August 1999, but did not file an EEOC complaint until July 28, 2003. *See* 42 U.S.C. § 2000e-5(e)(1) (requiring a plaintiff to file Title VII charges with the EEOC within 180 days "after the alleged unlawful employment practice occurred," or within 300 days if the plaintiff "initially instituted proceedings with a State or local agency").

White brings his claims against DHHS and against Selig and Knickrehm in both their individual and official capacities.  The Court will first address the claims against Selig and Knickrehm in their individual capacities and then will address the claims against DHHS and Selig and Knickrehm in their official capacities.

**A.    White's Claims Against Selig and Knickrehm in their Individual Capacities**

Title VII prohibits race and sex discrimination by providing that "[i]t shall be an unlawful employment practice for an *employer* . . . to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a) (emphasis added).  Retaliation against individuals for exercising their Title VII rights is also prohibited, as an "employer" may not discriminate against an employee or applicant for employment because the individual opposed an unlawful employment practice or made a charge against the employer.  42 U.S.C. § 2000e-3(a).  The important point as to Selig and Knickrehm is that Title VII only prohibits unlawful employment discrimination and retaliation practices by "employers."  The initial inquiry in a Title VII action is thus whether an employment relationship exists between the plaintiff and the defendant.  *See Graves v. Women's Prof'l Rodeo Ass'n., Inc.*, 907 F.2d 71, 73 (8th Cir. 1990).  Individual employees and supervisors are not personally liable as employers under Title VII.  *See Schoffstall v. Henderson*, 223 F.3d 818, 821 n.2 (8th Cir. 2000); *Spencer v. Ripley County State Bank*, 123 F.3d 690, 691-92 (8th Cir. 1997); *Lenhardt v. Basic Inst. of Tech., Inc.*, 55 F.3d 337, 381 (8th Cir. 1995).

Using similar language, the ADEA makes it "unlawful for an *employer* . . . to fail or refuse to hire or to discharge any individual . . . because of such individual's age."  29 U.S.C. § 623(a) (emphasis added).  The ADEA defines "employer" in exactly the same way Title VII does, *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207, 117 S. Ct. 660, 663, 136 L. Ed. 2d 644 (1997), and

federal courts have held that individual defendants cannot be held liable under either Title VII or the ADEA, *e.g.*, *Villodas v. Healthsouth Corp.*, 338 F. Supp. 2d 1096, 1103 (D. Ariz. 2004). Accordingly, White cannot maintain any of his claims against Selig and Knickrehm individually.

**B.      White's Claims Against Selig and Knickrehm in their Official Capacities**

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989). "As such, it is no different from a suit against the State itself." *Id.  See also Garcia v. Bd. of Educ. of Socorro Consol. Sch. Dist.*, 777 F.2d 1403, 1407 (10th Cir. 1985) (a suit against members of a state agency acting in their official capacities is a suit against the agency itself). Accordingly, White's claims against DHHS and Selig and Knickrehm in their official capacities are analyzed together below.

**C.      White's Age Discrimination Claim**

As noted above, Title VII does not prohibit discrimination based on age, and White cites no other basis of jurisdiction for his discrimination claims. The Court will nevertheless consider whether White can maintain a claim for age discrimination under the ADEA.

The Supreme Court has held that the ADEA did not validly abrogate states' Eleventh Amendment sovereign immunity from suit by private individuals. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 91, 120 S. Ct. 631, 650, 145 L. Ed. 2d 522 (2000). Arkansas is thus immune from ADEA suits. *Whitten v. Ark. Dep't of Human Servs.*, 2 Fed. App'x 595, 597 (8th Cir. 2001) (citing *Kimel*, 528 U.S. at 91). White therefore cannot maintain an age discrimination claim against either DHHS or Selig and Knickrehm in their official capacities. *See Tex. Cmty. Bank v. Mo. Dep't of Soc. Servs.*, 232 F.3d 942, 943 (8th Cir. 2000) (state agencies may assert the Eleventh Amendment immunity of the state).

D.      **White's Title VII Claims**

The defendants contend that Selig and Knickrehm are immune in their official capacities due to the state's Eleventh Amendment sovereign immunity.   Congress's enactment of Title VII, however, validly abrogated the states' Eleventh Amendment immunity.   *Maitland v. Univ. of Minn.*, 260 F.3d 959, 964 (8th Cir. 2001).   Therefore neither DHHS nor its officials, *i.e.*, Selig and Knickrehm in their official capacities, are immune from White's Title VII claims.   White's sex and race discrimination and retaliation claims fail as a matter of law, however, for the reasons explained below.

1.      **White's Discrimination Claims**

White contends that he was not rehired because of his race and sex.   Because White presents no direct evidence of discrimination, his failure-to-hire claim is analyzed under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which means that a plaintiff typically must demonstrate the following four elements: (1) that he belonged to a protected class, (2) that he applied and met the minimum qualifications for the job, (3) that he was rejected, and (4) that after rejecting the plaintiff the employer continued to seek applicants with the plaintiff's qualifications.   *Caviness v. Nucor-Yamato Steel Co.*, 105 F.3d 1216, 1223 (8th Cir. 1997) (citing *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).   The Supreme Court has recognized, however, that facts vary in Title VII cases and the *prima facie* proof required of a plaintiff may differ according to the situation.   *McDonnell Douglas*, 411 U.S. at 802 n.13.   The most appropriate fourth element to apply in this case is whether the employer hired a similarly qualified applicant who was not a member of the protected group.   *See Peterson v. Scott County*, 406 F.3d 515, 522 (8th Cir. 2005) (plaintiff's *prima facie* case included showing that persons outside the protected class were hired instead of plaintiff); *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104,

7

1109 (8th Cir. 1998) (fourth element in failure-to-promote case is "that a similarly qualified employee, not part of a protected group, was promoted instead").

If the plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination is created.  The employer may rebut this presumption by articulating one or more nondiscriminatory reasons for the employment decision.  When the *prima facie case* has been successfully rebutted, the presumption of discrimination drops out of the picture, and the burden shifts back to the plaintiff to present evidence sufficient to support two findings.  *McCullough v. Real Foods, Inc.*,  140 F.3d 1123, 1127 (8th Cir. 1998).  First, the plaintiff must present evidence that creates a fact issue as to whether the employer's proffered reasons are mere pretext.  *Id*.  Second, he must present evidence that creates a reasonable inference that the adverse employment decision was an act of intentional discrimination on the basis of a protected characteristic such as race or sex.  *Id*.  *See also Robinson v. Sears, Roebuck and Co.*, 111 F. Supp. 2d 1101, 1112 (E.D. Ark. 2000).

### (a)    Race Discrimination

The Court may bypass analysis of the *prima facie* case where the facts permit easy disposition under a later stage of the *McDonnell Douglas* test.  *Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1046 (8th Cir. 2003). Assuming that White has established a *prima facie* case, the defendants have met their burden of production by asserting that better qualified persons were hired as legitimate, nondiscriminatory reasons for not hiring White.  *See Krenik*, 47 F.3d at 960 (employer's assertion that it hired a better qualified applicant satisfied burden of producing legitimate, nondiscriminatory basis for not hiring the plaintiff).  Under the *McDonnell Douglas* analysis, the burden thus shifts to White to show that the defendants' reasons are mere pretext and to create a reasonable inference that race was a motivating factor.  White has not met this burden.

White responds to the defendants' asserted reason by pointing to his own qualifications and comparing them to the qualifications of those hired for the seven positions at issue. Specifically, White asserts that he holds a Master's degree, while some of the applicants hired hold only Bachelor's degrees; he is a Certified Public Manager; and he has more administrative and supervisory experience than the applicants hired. The defendants do not dispute White's qualifications, but contend that the persons hired were better qualified because their education and work experience were more directly related to the specific job openings. In support of their position, the defendants have produced evidence as to the specific educational and professional qualifications of the applicants who were hired. White does not dispute the accuracy of this evidence.

White's argument, essentially, is that the defendants should have placed more value on the type of qualifications that he possessed and less value on the qualifications of the other applicants. This argument is the same as that advanced by the plaintiff in *Krenik, supra*. The Eighth Circuit rejected this argument, stating that "'federal courts do not sit as a super-personnel department that reexamines an entity's business decisions.'" *Krenik*, 47 F.3d at 960 (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994)). In the normal course of business, employers will hire the most qualified candidates, and an employer, not a federal court, is in the best position to identify those strengths that constitute the best qualifications. *Ross v. Kan. City Power & Light Co.*, 293 F.3d 1041, 1047 (8th Cir. 2002) (citing *Duffy v. Wolle*, 123 F.3d 1026, 1037-38 (8th Cir. 1997)). An employer has wide discretion to establish its requirements and qualifications for particular positions, so long as these requirements do not discriminate based upon impermissible characteristics. *See Ross*, 293 F.3d at 1047; *Duffy*, 123 F.3d at 1037-38.

The Court recognizes that the defendants' evaluation of the relative merits of different applicants' varying educational and professional backgrounds is somewhat subjective, and the

9

Eighth Circuit has cautioned against the use of subjective criteria because they are easily fabricated. *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 858 (8th Cir. 2003).  Such subjective evaluations alone, however, do not create an inference of discrimination where the employer has not chosen a clearly less qualified or unqualified candidate and the plaintiff has not cast doubt on the employer's proffered reasons for its decision.  *Id.*

Finally, even if the evidence of White's qualifications, compared to those of the persons hired, were sufficient to show that the defendants' stated reasons were pretextual, White has offered no evidence that the stated reasons were a pretext for racial discrimination.  "[E]vidence of pretext will not by itself be enough to make a submissible case if it is, standing alone, inconsistent with a reasonable inference of [illegal] discrimination."  *Ryther v. KARE 11*, 108 F.3d 832, 837 (8th Cir. 1997). "[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752, 125 L. Ed. 2d 407 (1993).  *See also Johnson v. AT&T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005) ("the showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee," as the employee must "show that the circumstances permit a reasonable inference to be drawn that the real reason . . . was because of his race").

While White alleges that racial discrimination was the real reason that the defendants did not hire him, bald allegations alone cannot create an issue of material fact to withstand a motion for summary judgment.  *See Krenik*, 47 F.3d at 957 (to withstand a motion for summary judgment, the nonmoving party cannot rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts that create a genuine issue for trial).  White asserts that the defendants failed to follow proper procedures in implementing the RIF and that, had they done so, he would

10

have been guaranteed another position, but he offers no evidence that the defendants' actions were motivated by racial animus.  White testified that during his job interviews and contacts with DHHS in trying to secure a new job, no one made any racially derogatory remarks.  He points only to the memorandum that he wrote in which he accused Selig of "racist" actions.  Because White has offered no explanation or evidence as to what the alleged racist actions were, however, this memorandum amounts to nothing more than another unsupported allegation.  Moreover, the memorandum was written in 1997, two years before White's termination and subsequent attempts to secure another job.  Events that are remote in time, without more, are insufficient to create a trialworthy issue of pretext.  *See Simmons v. Oce-USA, Inc.*, 174 F.3d 913, 916 (8th Cir. 1999) (offensive remarks that are remote in time or made outside of the decision-making process are insufficient to establish issue of pretext).

The most compelling evidence, however, is the racial mix of the individuals who were hired for the seven positions in question.  Because one person who was hired quit and had to be replaced, the defendants have actually hired eight individuals for these seven positions.  Six of these eight individuals were African-American.  No reasonable jury could find that the defendants failed to hire White because he is African-American.

### (b)     Sex Discrimination

White also contends that the defendants unlawfully discriminated against him because he is male.  He presents no direct evidence of sex discrimination, so the Court evaluates this claim under the *McDonnell Douglas* burden-shifting framework outlined above.  In a reverse discrimination case such as this, however, the Eighth Circuit also requires the plaintiff to show that "'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority.'"  *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004)

(quoting *Duffy*, 123 F.3d at 1036); *Woods v. Perry*, 375 F.3d 671, 673 (8th Cir. 2004) (same).  A plaintiff can show suspicious background circumstances by showing evidence that the defendant is "inclined to discriminate invidiously against males or something 'fishy' about the facts that raises an inference of discrimination."  *Woods*, 375 F.3d at 674.  In this case, as in any employment discrimination case, the ultimate burden of persuasion remains at all times with the plaintiff.  *Id*.

White first argues that "[t]he evidence of [his] superior qualification [sic] to those selected females, indicates something 'fishy' about the facts at hand."  As explained above, however, White has not shown that his qualifications for the positions at issue were superior to those of the individuals hired.  Although White has more total years of education or experience than some of the successful job candidates, his education and experience was not as pertinent to the positions at issue as the education and experience of the persons who were hired.  It is inevitable that job candidates will have different strengths and qualifications, and the choice of one qualified candidate over another is not sufficient to raise an inference of discrimination.  *Woods*, 375 F.3d at 675-76; *Duffy*, 123 F.3d at 1038.

White next asserts that during his interviews for some of the positions, three of the "hiring supervisors emphasized the female dominated work environment indicating that men were needed to work in this area but overall have received few applicants."  Thus, according to White, these supervisors "appear[ed] to imply a preference for female applicants."  Even assuming that these three supervisors stated that the work environment was female dominated, that more men were needed to work in the area, and that they had received few applicants, these statements on their face do not suggest a discriminatory animus toward men.  To the contrary, these comments suggest that the supervisors would have liked to have male applicants for the jobs, but few men applied.

12

Finally, even if White could show that DHHS "is the unusual employer who discriminates against men," he still bears the burden of showing that the defendants' stated reason for its hiring decision, that other candidates were more qualified for the specific job openings, was pretextual. *See Woods*, 375 F.3d at 676.  His argument that this stated reason was a pretext for sex discrimination fails for some of the same reasons that his arguments for race discrimination fail. The defendants have produced undisputed evidence as to the qualifications of the successful job applicants.  An employer has great latitude to determine which strengths and qualifications it seeks in its employees.  *See Ross*, 293 F.3d at 1047; *Duffy*, 123 F.3d at 1037-38.  White has offered no evidence that the defendants did not actually prefer the qualifications possessed by the successful applicants over those possessed by White.

### 2.  White's Retaliation Claim

Title VII prohibits an employer from retaliating against an employee because he has "made a charge" of unlawful discrimination or has "participated in any manner in an investigation, proceeding, or hearing under this subchapter."  *Cross v. Cleaver*, 142 F.3d 1059, 1071 (8th Cir. 1998) (quoting 42 U.S.C. § 2000e-3(a)).  To establish a claim of retaliation in violation of Title VII, a plaintiff must show the following elements: (1) the plaintiff filed a charge of harassment or engaged in other protected activity; (2) the plaintiff's employer subsequently took adverse employment action against him; and (3) the adverse action was causally linked to the plaintiff's protected activity.  *Id.*  "Once this *prima facie* showing is made, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions, and, if the employer meets that burden, the presumption of retaliation disappears."  *Id.* at 1071-72.  If the employer does this, the plaintiff has the burden to identify specific facts in the record showing that the offered reasons was

13

merely pretextual and that unlawful retaliation was a motivating factor for the decision. *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 773 (8th Cir. 2003).

The parties do not dispute the first and second elements: White engaged in protected activity when he filed his original Title VII lawsuit in 1998, and he suffered adverse employment action when the defendants did not hire him for any of the jobs for which he applied. White has failed to establish a *prima facie* case of retaliation, however, because he has not shown a causal link between the protected activity and the defendants' subsequent failure to rehire him.

White has shown a temporal connection between these events. White's initial Title VII lawsuit was ongoing at the time of his termination, and White testified in his deposition he began applying for new jobs with DHHS – and DHHS began rejecting him – during this time period. In general, "more than a temporal connection between protected activity and an adverse employment action is required to show a genuine factual issue on retaliation exists." *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 716 (8th Cir. 2000). In some circumstances, however, the requisite causal connection necessary to establish a *prima facie* case "may be proved circumstantially by showing the [adverse employment action] followed the protected activity so closely in time as to justify an inference of retaliatory motive." *Id.* at 715-16. In this case, White filed his initial Title VII lawsuit in March 1998, but his termination and initial attempts to secure a new position occurred during the summer of 1999, over a year later. Accordingly, the adverse employment action, *i.e.*, DHHS's failure to rehire White, cannot be characterized as following White's protected activities "so closely in time as to justify an inference of retaliatory motive." *See Feltmann v. Sieben*, 108 F.3d 970, 977 (8th Cir. 1997) (temporal proximity, without more, insufficient to show causal link where plaintiff was fired six months after filing sex discrimination complaint); *Nelson v. J.C. Penney Co., Inc.*, 75

F.3d 343, 346-47 (8th Cir. 1996) (plaintiff fired a month after he filed age discrimination charge failed to establish causal link without evidence in addition to temporal proximity).

White alleges that Knickrehm's implementation of the RIF plan under which White was terminated is evidence that the defendants did not want him rehired.  Specifically, White points to the memorandum stating that mandatory placement was not required with White's RIF plan.  That memorandum also stated, however, that White would "be considered for all vacant positions in the department for which [he] qualifie[d]" and provided for expedited hiring procedures.  White's allegation that this memorandum was an "unwritten directive to prevent [his] re-employment" is contradicted by its express language.  In short, the RIF does not establish a link between White's Title VII suit and the defendants' decisions not to rehire him following his termination.

Furthermore, to establish a *prima facie* case of retaliation, the plaintiff must show that the decision-makers responsible for the adverse employment action knew about the plaintiff's protected activity.  *See Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881-82 (8th Cir. 2005) (motive of decision-makers, not other parties, was relevant to retaliation claim); *Talley v. United States Postal Serv.*, 720 F.2d 505, 508 (8th Cir. 1983) (plaintiff unable to prove causal connection between discrimination complaints and discharge where supervisor who discharged plaintiff had no knowledge of the protected activity).  Upper management of DHHS knew about White's protected activity, but they were not the hiring supervisors for the positions in question.  White has offered no evidence that the hiring supervisors who made the decisions not to hire him for the positions in question knew anything about his previous Title VII action.  It is undisputed that DHHS has more than 7,000 employees statewide, so it is likely that most of these employees would not know about White's situation.  Selig testified that no one called him to inquire about White's job applications and that he had no input into the hiring decisions on the positions for which White applied.  In the

15

absence of any evidence that the hiring supervisors knew of White's protected activities, White cannot establish a *prima facie* case of retaliation.

Finally, even if White established a *prima facie* case, his retaliation claim would still fail because the defendants have articulated a non-retaliatory reason for not hiring White, *i.e.*, that the other candidates were better qualified, and White has not shown that this reason is pretextual. As discussed in detail above, an employer has broad discretion to determine which strengths it seeks in its employees. White's insistence that his qualifications should have been more highly valued does not create a genuine issue of fact as to whether DHHS's reasons for its hiring decisions were pretextual. Because White has produced no evidence that DHHS refused to hire him in retaliation for his previous Title VII suit, his retaliation claim cannot survive summary judgment.

## CONCLUSION

There is no genuine issue of material fact. The defendants have established a *prima facie* case of entitlement to summary judgment. White has failed to meet proof with proof. The defendants' motion for summary judgment (Docket #19) is GRANTED.

IT IS SO ORDERED this 30th day of January, 2006.


J. LEON HOLMES
UNITED STATES DISTRICT JUDGE